**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 4:19CR40018-001** |
| | ) | |
| **LONNIE JOSEPH PARKER,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

---

### MOTION FOR A NEW TRIAL PURSUANT TO FED. R. CRIM. P. 33

---

COMES NOW, Lonnie Joseph Parker, M.D., ("Dr. Parker"), by and through his undersigned counsel, and hereby files this Motion for a New Trial Pursuant to Fed. R. Crim. P. 33 and requests that this Court grant the Defendant his untimely motion for a new trial to prevent a manifest injustice.

### I.   This Court Should Permit Defendant's Untimely Rule 33 Motion Due to Excusable Neglect, Namely the Ineffective Assistance of Prior Counsel

Fed. R. Crim. P. 33 sets the timeline for filing a motion for new trial based on "newly discovered evidence" and requires a motion within three (3) years. A motion for a new trial based on any other grounds must be filed within fourteen (14) days unless an enlargement of time is requested during this time period. The Defendant was convicted of various counts of unlawful distribution of controlled substances on October 28, 2022. [Dkt 169]. Defendant's counsel did not file a motion for new trial until March 3, 2023. [Dkt 196]. Due to the untimely nature of the motion, Defendant's counsel was forced to argue that the 2022 CDC Guidelines were "new evidence". An argument that was quickly and rightly rejected by this Court. [Dkt 203].

Under Fed. R. Crim. P. 45(b)(1)(B) a court may extend the deadline for the filing of a new trial motion after the time expires if the movant failed to act because of excusable neglect. The advisory committee notes to the 2005 amendments specifically state that this excusable neglect rule applies to the [14-day] time limit for motions filed under Rules 29, 33, and 34. *See*, *United States v. Boesen*, 599 F.3d 874, 880 (8th Cir. 2010) (applying Rule 45 to a Rule 33 analysis although not ultimately finding excusable neglect).

In *Pioneer Investment Services Co. v. Brunswick Associated Ltd. Partnership*, 507 U.S. 380, 395 (1983), the Supreme Court set out the four (4) factors to be considered when determining whether a late filing is due to excusable neglect: 1) the danger of prejudice to the opposing party, 2) the length of the delay and its potential impact on judicial proceedings, 3) the reason for the delay, including whether it was within the reasonable control of the movant, and 4) whether the movant acted in good faith. *See*, *Stutson v. United States*, 516 U.S. 193, 196-98 (1996) (holding that *Pioneer* applies to criminal cases).

The Defendant will address the four (4) factors below as they apply to the present case. However, at the outset, Defendant recognizes that appellate courts and trial courts ordinarily do not review ineffective assistance of counsel claims on direct appeal but instead resolves them in 2255 proceedings. *United States v. McAdory*, 501 F.3d 868, 972-73 (8th Cir. 2007). However, the Defendant respectfully requests that this Court fully develop the record regarding Defendant's ineffective assistance of counsel claims, now, to save the Defendant and the Government the time and expense of proceeding through a direct appeal to a 2255 proceeding, only to reach the same analysis. By then, should a new trial be granted, both parties would be prejudiced given the age of the case and the failing memories of witnesses. Full development of Defendant's claims will permit

this Court to make an informed decision in either granting or denying Defendant's request to file an untimely motion for a new trial.

## II.    The Pioneer Factors Weigh Heavily in Favor of Permitting Defendant's Untimely Rule 33 Motion

The first factor, the danger of unfair prejudice to the opposing party cuts both ways. Likely the Government will argue that the public has a right to a swift appellate review of this case and finality. However, Defendant's claims will be reviewed either now or at a later 2255 proceeding after appellate review. Neither party is prejudiced by the swift review of Defendant's appellate issue, allowing us to move closer to finality in this case. In fact, a full review while this case is still in the District Court favors finality. *United States v. Brown*, 623 F.3d 104, 113 (2nd Cir. 2010).

The second factor, length of delay and potential impact on judicial proceedings cut in favor of the Defendant. The Defendant has retained new counsel who recognized the untimely filing and wishes to fully exhaust Defendant's constitutional right to effective assistance of counsel and a full review of the issues in this case. Defendant has not been sentenced and a sentencing date has not been set. This Court could review the Defendant's motion and any Government response before he is sentenced without any undue delay or impact on the judicial proceedings. Defendant recognizes that this is not a motion seeking "excusable neglect" a day after a missed deadline – over four (4) months have passed since Defendant's prior motion for a new trial. However, he seeks to right a wrong that must be addressed in order to be assisted by constitutionally effective counsel.

The third factor is the most important factor in this analysis – the reason for the delay, including whether it was within the reasonable control of the movant. Here, we must separate the actions of Defendant from his counsel. The Defendant was not advised of his right to file a timely motion for a new trial and was not presented with the opportunity to make a fully informed decision

and election regarding this right. Moreover, he was not informed by prior counsel that counsel had missed the deadline and elected to pursue an alternative and unsuccessful new theory.

Defendant concedes that ineffective assistance of counsel issues are more appropriately raised in collateral proceedings because they normally involve facts outside the original record. *United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003). An exception exists where a, "miscarriage of justice would obviously result or the outcome would be inconsistent with substantial justice". *Id.* The Second Circuit Court of Appeals has found, "that when a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding". *United States v. Long*, 2012 U.S. Dist. LEXIS 49539 (D.S.D. 2012) (Exhibit A) Citing, *United States v. Brown*, 623 F.3d 104, 113 (2nd Cir. 2010). The Second Circuit reasoned that because the defendant, "raised his ineffective assistance claim after the jury convicted him but before sentence was imposed" a motion for a new trial was the proper vehicle to raise the ineffective assistance claim.

A defendant's right to effective assistance extends beyond the trial and proceedings through his first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387 (1985). In order to survive a claim of ineffective assistance of counsel, Defendant must establish that counsel rendered deficient performance, meaning, that it fell below an objective standard of reasonableness when considered in light of the circumstances surrounding the case and that he suffered prejudice as a result. *Couch v. Trickey*, 892 F.3d 1338, 1343 (8th Cir. 1989).

Defendant has a per-se claim of ineffective assistance of counsel. Former counsel failed to file a motion for new trial pursuant to Fed. R. Crim. P. 33. Defendant has informed new counsel that he requested that his counsel file a motion but was not informed of the time limitations. Former

4

counsel did not inform the Defendant that the deadline had passed and instead, agreed to file a motion but couched as a "newly discovered" evidence claim – a claim that this Court swiftly and rightfully rejected. Should the Court wish to further develop the record, Defendant is willing to testify to these facts and has certified this motion by signing below. Should the Court wish to question prior counsel, Defendant is willing to provide a limited waiver of attorney-client privilege so that the Court can be sure that the error was in fact an error and not a matter of defense strategy (although the proposition that a defendant has something to gain by not filing a timely Rule 33 motion is factually invalid).

This Court can find support from a fellow district in determining that it is appropriate to review Defendant's ineffective assistance of counsel claim and find excusable neglect. *United States v. Long*, 2012 U.S. Dist. LEXIS 49539 (D.S.D. 2012).  In *United States v. Long*, a South Dakota District Court Case, the District Court applied the Second Circuit holding in *Brown* and evaluated Defendant's post-trial ineffective assistance of counsel claim and determined that it was appropriate to determine excusable neglect existed in a new untimely Rule 33 motion. This is the same relief the Defendant is requesting here, a full review of Defendant's Rule 33 issues untainted by prior counsel's ineffectiveness. The district court in *Long* had the full trial transcript for review, ordered further briefing on the issue of excusable neglect and ineffective assistance of counsel, and deemed that there was sufficient evidence in the record to analyze whether prior counsel's assistance was defective.

The court found it important that Long's trial counsel represented him during trial and through the (then) fourteen (14) day window in which his motion for a new trial should have been filed and it was unlikely that prior counsel would recognize his own shortcomings at trial. The court determined, "the Court finds that excusable neglect may exist because of trial counsel's

alleged ineffective assistance, which would be a circumstance beyond Defendant's control". *See*, *Kurka v. Iowa County*, 628 F.3d 953, 959 (8th Cir. 2010) (stating that excusable neglect is an equitable consideration that takes into account all relevant circumstances as well as circumstances beyond the party's control).

While the court in *Long* did not ultimately grant the defendant a new trial, it clearly held that his untimely motion for a new trial could be heard and fully analyzed his claims. Defendant requests the same relief here.

### III.   A New Trial is Warranted: Dr. Parker Was Convicted Under a Standard that is Not Found in the Law – a Violation of State Prescribing Criteria

Trial counsel was ineffective for failing to seek a new trial and for failing to object to Jury Instruction Number Six (6) which permits conviction for a violation of the State of Arkansas prescribing "criteria". [1] [Dkt 170] . As explained more thoroughly below, the standard to convict a physician for a violation of 21 U.S.C. § 841(a) is not whether the defendant violated state prescribing criteria- the Government must show that Defendant issued a prescription that he knew was "unauthorized". *Xiulu Ruan v. United States*, 142 S.Ct. 2370, 2382 (2022) The Supreme Court admits that this term is vague and ambiguous, but clarity cannot be found in rigidly applying administrative regulations not adopted by Congress and that was never intended to carry the weight of federal drug punishments. *Id.* at 2386.

### a.   841(a) Should Not be Predicated on State Prescribing Guidelines

This Court incorrectly determined that state prescribing guidelines set the boundaries for a physicians conduct under 21 U.S.C. § 841(a)  and instructed the jury in accordance with this view:

---

[1] Defendant's counsel has not yet received transcripts and specifically transcripts of the charge conference and has not been able to ascertain whether Defendant's counsel objected to Jury Instruction Number Six (6). However, counsel did fail to file a motion for a new trial on the grounds discussed below which rendered their assistance ineffective. Defendant seeks leave of the Court to raise new Rule 33 challenges once Defendant's counsel has had the opportunity to fully review the record.

"the terms legitimate medical purpose and usual course of professional practice mean acting in accordance with appropriate criteria for prescribing controlled substances in the State of Arkansas". [Dkt 170]. A new trial is warranted.

Since *Xiulu Ruan v. United States*, this has been a complex issue that has resulted in varying interpretations of the phrase "legitimate medical purpose". The result is exactly what our system of laws was intended to prevent – a varying interpretation of the scope of permissible conduct required as a physician. This has resulted in a drastic shift in the availability of pain treatment for pain patients in this country as a relatively risk-adverse population of healthcare providers struggle with shifting and vague limits of conduct.

As the Court will see, there is no support for the proposition that state prescribing criteria set the limits of conduct for a physician under 21 U.S.C. § 841(a).

Let's begin with the statute and implementing regulations. 21 U.S.C. § 841(a) makes no mention of state prescribing criteria and from a textualist approach – Congress has not delegated any authority to the States to set the limits of conduct required under 21 U.S.C. § 841(a). Likewise, the implementing regulation 21 C.F.R. § 1306.04 states that for a prescription to be valid, it must be issued for a "legitimate medical purpose by a practitioner acting in the usual course of professional practice". The regulation makes no mention of state prescribing guidelines and, indeed, when the regulation was first adopted most states did not even have prescribing guidelines. The notion that a state can have such a broad impact on the application of federal law is foreign to the application of federal criminal statutes.

After the CDC published its guidelines in 2016, several states used its recommendations as a model for their own opioid limitation laws and some adopted them as black letter law.[2] As of 2019, thirty-nine (39) states enacted laws restricting opioid prescribing, and fourteen (14) states imposed statutory limits on the maximum daily dosage of opioids a provider can prescribe. *Id.* at 1823-24. From 2016 through 2018 the federal and state opioid-related policies totaled five hundred twenty-seven (527), with one hundred-seventeen (171) of those policies imposing opioid prescribing limits. *Id.* According to the CDC and Human Rights Watch, forty-six (46) states established guidelines, laws, or policies aligned with the CDC's recommendations in the CDC Guideline. Violation of these policies and regulations is confined by statute to State disciplinary action that could involve a fine, reprimand, suspension, or revocation.

The Court's contention that a state board, committee, or sub-committee has the power to influence the interpretation of the law, and thereby alter the conduct required by Congress or the DEA, ignores the absence of any indication from Congress that a violation of 21 U.S.C. § 841(a)(1) is contingent on state law. There is no mention of state prescribing rules in the statute, regulation, or any of the myriad of documents we can parse through to understand Congress' intent. Nor does this appear in the Ryan Haight Online Pharmacy Consumer Protection Act of 2008 which further restricted the phrase "legitimate medical purpose".[3]

---

[2] Dineen, *supra* note 20, at 962; *accord* Allison Petersen et al., *State Legislative Responses to the Opioid Crisis: Leading Examples*, 11 J. HEALTH & LIFE SCI. L. 30, 35-40 (2018); Noah, *supra* note 101, at 646 ("The CDC's effort appears to have had an impact, in part thanks to state decisions to codify parts of these guidelines.").

[3] When Congress amended the CSA to account for both mail order and internet prescribing in recent decades, it included new statutory provisions that include "legitimate medical purpose" in the definition of a valid prescription. For mail-order prescriptions, a valid prescription is "issued for a legitimate medical purpose by an individual practitioner licensed by law to administer and prescribe the drugs concerned and acting in the usual course of the practitioner's professional practice." 21 U.S.C. § 830(b)(3)(A)(ii) (2000). For internet prescriptions, among other things, a valid prescription is one "issued for a legitimate medical purpose in the usual course of professional practice." 21 U.S.C. § 829(e)(2)(A) (2008).

*Pre-Ruan* jury instructions, even dating back to the seminal case, *United States v. Moore*, do not contain any reference to prescribing standards: "a physician, who knowingly or intentionally, did dispense or distribute [a controlled substance] by prescription, did so other than in good faith…in the usual course of a professional practice and in accordance with a standard of medical practice generally recognized and accepted in the **United States**". *United States v. Moore*, 423 U.S. 122 (1975) (emphasis added)

The election of a national standard is important here. Even the Supreme Court in *Moore* recognized that it would be inappropriate to hang such a weighty federal law with such harsh punishment on factors created by state boards and only intended for administrative sanctions.

The next time the Supreme Court addressed this issue was in *Gonzales v. Oregon* where the court noted that it had never considered, "the extent to which the CSA regulates medical practice beyond prohibiting a doctor from acting as a drug pusher instead of a physician". *Gonzales v. Oregon*, 546 U.S. 243, 261-62 (2006). Are we to say that any physician who violates any state prescribing regulation even if they do so unintentionally is acting as a drug pusher?

After *Moore* and *Gonzales* most courts allowed some type of good-faith defense for prescribers to try to protect against this notion. The First Circuit, Seventh Circuit, and Ninth Circuit adopted a subjective good faith defense standard. *United States v. Sabean*, 885 F.3d 27 (1st Cir. 2018); *United States v. Rosenberg*, 585 F.3d 355, 357 (7th Cir. 2009); *United States v. Feingold*, 454 F.3d 1001 (9th Cir. 2006). Since *Ruan*, those instructions have gone away and what we have seen in their place is adherence to a state standard with no good faith exception.

And now we get to *Xiulu Ruan v. United States*. Although, interpretation of the phrase "as authorized" was not on the menu for the Court, it did come up in oral argument by a Justice in the majority:

> Justice Gorsuch: Just assume hypothetically [that the government brings a case against a doctor where their behavior is a close call] and that the jury believes that it's not legitimate medical purpose under your regulations. Even though it's an extremely close case, that individual stands, under the government's view, unable to shield himself behind any *mens rea* requirement and is subject to essentially a regulatory crime encompassing 20 years to maybe life in prison.
>
> Mr. Feigin: Well, Your Honor, I think I think it's –
>
> Justice Gorsuch: I think the answer has to be yes, isn't it?
>
> Mr. Feigin: Your Honor, I think the answer is going to be yes.

Tr. of Oral Arg., *supra* note 4, at 71-72.

Justice Gorsuch found it absurd that a physician could be convicted of a regulatory crime encompassing twenty (20) years to "maybe life" in prison.

And in the opinion authored by Justice Breyer, the court did not define "as authorized" as adherence to any particular state regulation. The notion of a strict liability standard requiring a physician to treat within the "standard of care" or risk the weighty punishment that federal controlled substance statutes afford was never discussed and is not included in the opinion. In fact, evidence points the other way.

> In addition, the regulatory language defining an authorized prescription is, we have said, "ambiguous," written in "generalit[ies], susceptible to more precise definition and open to varying constructions. The conduct prohibited by such language (issuing invalid prescriptions) is thus "often difficult to distinguish from the gray zone of socially acceptable . . . conduct. A strong scienter requirement helps to diminish the risk of "overdeterrence," *i.e.*, punishing acceptable and beneficial conduct that lies close to, but on the permissible side of, the criminal line.

*Xiulu Ruan v. United States*, 142 S. Ct. 2370, 2377-2378 (2022)  (Internal Citations Omitted)

If the phrase in question was capable of a precise definition and specifically aligned with a state prescribing regulation – the Supreme Court would not have specifically discussed the ambiguous nature of the regulation. An ambiguous regulation cannot be made unambiguous by an interpretation solely found in state law and it certainly cannot be made unambiguous by adhering to prescribing standards that widely differ among the states.

The Supreme Court puts the nail in the "state standard" coffin with the following passage:

> Finally, the Government argues that requiring it to prove that a doctor knowingly or intentionally acted not as authorized will allow bad-apple doctors to escape liability by claiming idiosyncratic views about their prescribing authority.
>
> ***
>
> The Government, of course, can prove knowledge of a lack of authorization through **circumstantial evidence**. *See ibid.* And the regulation defining the scope of a doctor's prescribing authority does so by reference to objective criteria such as "legitimate medical purpose" and "usual course" of "professional practice". As we have said before, "the more unreasonable" a defendant's "asserted beliefs or misunderstandings are," especially as measured against objective criteria, "the more likely the jury . . . will find that the Government has carried its burden of proving knowledge." But the Government must still carry this burden. And for purposes [***28] of a criminal conviction under § 841, this requires proving that a defendant knew or intended that his or her conduct was unauthorized.

*Id.* at 2382. (emphasis added)

It's important to note that knowledge can be proven by "circumstantial evidence". The Court did not say it can be proven by direct evidence of a state standard. The only way to read this passage is that the Government must establish what the standard is – by way of expert testimony – regarding what a reasonable physician would do and the more unreasonable the Defendant's actions are the more likely he/she is to be convicted. A conviction can be found in the distance between the defendant's actions and the applicable standard. Inserting a state standard in the jury

instructions creates a strict liability standard essentially permitting conviction based on prescribing criteria that do not place a Defendant's actions into the category of "unreasonable".

In a state where a 100 morphine milligram equivalent is the high bar for prescribing – is a prescription of 110 morphine milligram equivalents criminal? No, of course not.

The severity of the deviation is for the state medical board to determine. They can take no action at all, send a letter, a reprimand, or require re-education. [4]That is much different to say that a state standard paves the way for an *ipso facto* federal drug trafficking conviction.

Dr. Parker was convicted under a standard that is not found in the law, was not authorized by Congress, and has no foothold in recent Supreme Court precedent. A new trial is warranted.

## IV.   Conclusion

In conclusion, Dr. Parker respectfully requests that this Court permit his untimely motion under Fed. R. Crim. P. 33 and set a briefing schedule so that his new counsel can fully review the record and make appropriate arguments for a new trial. Alternatively, if the Court does not wish to permit new counsel the ability to review the record, this Court should grant a new trial for the reasons articulated above.

> Respectfully Submitted,
> CHAPMAN LAW GROUP

Dated: August 10, 2023                s/ *Ronald W. Chapman II*
> Ronald W. Chapman II, Esq., LL.M.
> MI Bar No. P73179
> *Counsel for Defendant Parker*
> 1441 W. Long Lake Rd., Ste 310
> Troy, MI  48098
> T: (248) 644-6326
> F: (248) 644-6324
> RWChapman@ChapmanLawGroup.com

---

[4] Previously, of his own volition, Dr. Parker underwent re-education to remove the suspension of his license. The Medical Board, however, never encouraged or required Dr. Parker to undergo any subsequent re-education.

Dated: 8/7/2023

_____

Lonnie J. Parker, M.D.
Defendant

13