# EXHIBIT A



**User Name:** Matthew Pelcowitz

**Date and Time:** Friday, July 28, 2023 5:07:00PM EDT

**Job Number:** 202391598

## Document (1)

1. *United States v. Long, 2012 U.S. Dist. LEXIS 49539*

   **Client/Matter:** ALJs

   **Search Terms:** United States v. Long, 2012 U.S. Dist. LEXIS 49539 (D.S.D. 2012)

   **Search Type:** Natural Language

   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |



Neutral

As of: July 28, 2023 9:07 PM Z

# United States v. Long

United States District Court for the District of South Dakota, Western Division

April 9, 2012, Decided; April 9, 2012, Filed

CR. 09-50051-01-KES

**Reporter**
2012 U.S. Dist. LEXIS 49539 *

UNITED STATES OF AMERICA, Plaintiff, vs. GILLMAN RODDY LONG, a/k/a Dave Gillman Long, Defendant.

**Subsequent History:** Decision reached on appeal by *United States v. Gillman Roddy Long, 2013 U.S. App. LEXIS 15109 (8th Cir. S.D., July 25, 2013)*

**Prior History:** *United States v. Long, 2011 U.S. Dist. LEXIS 68698 (D.S.D., June 27, 2011)*

## Core Terms

silence, excusable neglect, motion for a new trial, new trial, ineffective, trial counsel, arrest, rights, ineffective assistance of counsel, case-in-chief, trial strategy, ineffective assistance of counsel claim, right to remain silent, incriminate, pre-Miranda, sentencing, interview, warnings, ineffective assistance claim, postarrest, invoking, trial counsel's performance, counsel's performance, sentencing hearing, district court, file a motion, cross-examined, overwhelming, compulsion, assurance

**Counsel:** [*1] For Gillman Roddy Long, also known as Dave Gillman Long, Defendant: Larry M. Von Wald, LEAD ATTORNEY, Beardsley, Jensen & Von Wald, PROF.L.L.C., Rapid City, SD.

For USA, Plaintiff: Sarah Boensch Collins, LEAD ATTORNEY, U.S. Attorney's Office (Rapid City, SD), Rapid City Office, Rapid City, SD.

**Judges:** KAREN E. SCHREIER, CHIEF UNITED STATES DISTRICT JUDGE.

**Opinion by:** KAREN E. SCHREIER

## Opinion

ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL

Defendant, Gillman Roddy Long, moves the court to vacate his judgment of conviction and grant a new trial. Docket 273. Long claims that his convictions were unlawfully obtained, his trial counsel was ineffective, and the court should extend his time to request a new trial due to excusable neglect. The government resists this motion. Docket 278 & 281. The government claims that Long's constitutional rights were not violated and his trial counsel was not ineffective; therefore, Long has shown no excusable neglect that would justify an extension of his time to file a motion for new trial. For the following reasons, Long's motion is denied and his sentencing will proceed.

### BACKGROUND

Long was arrested in July of 2009 and charged with three counts of aggravated sexual abuse of a child in [*2] violation of *18 U.S.C. §§ 1153*, *2241(c)*, and *2246(2)*. Docket 3. The case went to trial in July of 2011. During its case-in-chief the government called FBI Special Agent Sheri Rice to testify about her interview with Long prior to his arrest. At the start of the interview, Agent Rice told Long that he was not under arrest, she had no warrant, he would not be arrested that day, and the interview was voluntary so he could leave at any time. Docket 269 at 159. Defendant was not given *Miranda* warnings and was not taken into custody.

Agent Rice asked Long if there was any sexual contact between him and AP, who was the niece of Long's girlfriend, Brenda Brewer. Long said that there was an incident when he was at the computer at Brewer's house. AP came up behind him and rubbed her breasts against his back. Docket 269 at 160. Long said that he stood up and pushed AP away from him. Agent Rice testified that Long then stopped the interview and said, "I do not want to incriminate myself. I would like to stop talking." Docket 269 at 160. Agent Rice gave this testimony during direct examination. Long's trial

counsel, Monica Colbath, did not object. Colbath specifically cross-examined Agent Rice about [*3] that statement and other portions of the interview. The government referenced Long's statement during its closing argument.

The jury returned a guilty verdict on two of the three charges, and Long was convicted of two counts of aggravated sexual abuse of a child. Docket 212. The court scheduled a sentencing hearing and the probation office began preparing a presentence report. Long did not move for a new trial under Federal Rule of Criminal Procedure 33(b)(2) within the mandatory 14 days as per the rule. Long requested new counsel, and the court granted that request on September 27, 2011. Docket 241. Long moved to continue sentencing so that his new attorney would have an opportunity to familiarize himself with the case and review the trial transcript. Docket 260. The sentencing hearing was scheduled for January 19, 2012.

Prior to his sentencing hearing, Long submitted a sentencing memorandum where he asked the court for a downward departure from the sentencing guidelines. Docket 264. For purposes of determining the length of his sentence, Long asked the court to consider an alleged Fifth Amendment violation at trial because of the introduction of his statement through Agent Rice's testimony. [*4] Docket 266. On the day of his sentencing hearing, Long filed a motion for a new trial and asked the court to extend the time to file his motion based on excusable neglect. Docket 273. The court heard argument on the issue of excusable neglect during the January 19, 2012, hearing and reserved ruling on that and the Fifth Amendment claim.

**DISCUSSION**

**I. Excusable Neglect**

Before the court can examine whether there was a substantive violation of Long's rights, Long must make a showing that the reasoning behind his delay in filing his motion for a new trial satisfies the excusable neglect standard. Long states that his trial counsel was ineffective, and that ineffective assistance of counsel satisfies excusable neglect. The government asserts that Long's counsel was not ineffective, he cannot satisfy excusable neglect, and his motion for a new trial should be denied.

Federal Rule of Criminal Procedure 33 requires that "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). "Under Fed. R. Crim. P. 45(b)(1)(B), a court may extend the deadline for the filing of a new [*5] trial motion after the time expires if the movant failed to act because of excusable neglect." United States v. Boesen, 599 F.3d 874, 879 (8th Cir. 2010). Rule 45 provides that "[w]hen an act must or may be done within a specified period, the court . . . may extend the time . . . on a party's motion made . . . after the time expires if the party failed to act because of excusable neglect." Fed. R. Crim. P. 45(b).

The Eighth Circuit Court of Appeals has stated that the following four factors must be considered by the court to determine whether it should extend the time period to file a motion for new trial based on excusable neglect: (1) "the danger of prejudice to the [opposing party]"; (2) "the length of the delay and its potential impact on judicial proceedings"; (3) "the reason for the delay, including whether it was within the reasonable control of the movant"; and, (4) "whether the movant acted in good faith." Boesen, 599 F.3d at 879 (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993)). The excusable neglect factors "do not bear equal weight as the reason for delay is generally a key factor in the analysis." Kurka v. Iowa Cnty., Ia., 628 F.3d 953, 959 (8th Cir. 2010) [*6] (citation omitted).

**A. Prejudice**

The government has stated that it will sustain serious prejudice if the court grants the motion for a new trial because a new trial would require the complaining abuse victim, AP, and TE (a Rule 413 witness), to again relive their experiences and further challenge their memories. The government also notes that the abuse allegations in the indictment occurred in 2009, but trial did not occur until 2011 because Long moved for numerous continuances and for a competency evaluation, so the delay and prejudice are severe.

The court acknowledges that the majority of the delay in this case is due to Long's own requests. It is likely that the government would be harmed if the court granted defendant's motion because of the substantial gap in time from trial until now because the witnesses' memories will have faded, and there will be a hardship placed upon the victims to relive their injuries. *See*

Boesen, 599 F.3d at 879 (finding that it was not error for the district court to find prejudice to the government because the delay could cause witnesses to "become unavailable" or for their memories to fade). The court finds that this factor weighs slightly in favor of [*7] denying defendant's request for an extension of time to file a motion for a new trial based on excusable neglect.

### B. Length of Delay

In this case, the delay from trial until Long's untimely filing of his motion for a new trial was approximately six months. The amount of time between the deadline to file the motion for a new trial and the actual date of filing goes against Long and weighs in favor of the government.

### C. Reason for Delay

Long argues that trial counsel Colbath's failure to object to the prosecution's admission of his statement and her subsequent failure to file a motion for new trial constitutes ineffective assistance of counsel and is the reason for delay. The government claims that Colbath was not ineffective, but even if she was ineffective, then the proper way to assert that claim would be in a collateral proceeding rather than direct review of a motion for a new trial. Before the court can consider the ineffective assistance of counsel claim on the merits, it must determine whether ineffective assistance of counsel can constitute "excusable neglect" and whether the court can entertain this ineffective assistance of counsel claim as it is postured.

In most cases, litigants [*8] do not raise ineffective assistance of counsel allegations on direct appeal, but instead through collateral proceedings under 28 U.S.C. § 2255. Boesen, 599 F.3d at 880 (citing United States v. McAdory, 501 F.3d 868, 872-73 (8th Cir. 2007)). "Except where a miscarriage of justice would obviously result or the outcome would be inconsistent with substantial justice, ineffective assistance of counsel issues are more appropriately raised in collateral proceedings because they normally involve facts outside the original record." United States v. Hughes, 330 F.3d 1068, 1069 (8th Cir. 2003) (citation omitted). "When ineffective assistance of counsel claims are pursued on direct appeal, they 'are presumptively dismissible, and virtually all will be dismissed.'" United States v. Flood, 635 F.3d 1255, 1260 (10th Cir. 2011) (citation omitted). There is an exception to that general rule "when the record is fully developed in the district court." Boesen, 599 F.3d at 880.

The Second Circuit Court of Appeals has found "that when a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider [*9] the claim at that point in the proceeding." United States v. Brown, 623 F.3d 104, 113 (2d Cir. 2010). The Second Circuit determined that "[b]ecause [defendant] raised his ineffective assistance claim after the jury convicted him but before sentence was imposed, we agree with the district court that a habeas petition pursuant to 28 U.S.C. § 2241 was not 'the proper vehicle' by which to advance his claim." Brown, 623 F.3d at 113 n.5. The court held "that the proper procedural avenue for defendants who wish to raise ineffective assistance claims after conviction but prior to sentencing is a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33." Id.

Long cites a case from the Sixth Circuit where the court determined that the ineffective assistance of the defendant's trial counsel was sufficient to amount to excusable neglect. United States v. Munoz, 605 F.3d 359, 371 (6th Cir. 2010). The court balanced the *Pioneer* factors to conclude that it could reach and consider the defendant's underlying ineffective assistance claim, and it ultimately determined that counsel's performance did not rise to the level of ineffective assistance such that a new trial was warranted. Id. at 377.

Long [*10] claims that as in *Munoz*, Colbath would not make a motion for a new trial based on her own trial errors because "it is axiomatic that an attorney . . . is unlikely to raise an ineffective-assistance claim against h[er]self." Munoz, 605 F.3d at 369 (internal quotations omitted and citations omitted). Even the most honest attorney "searching the record in good faith would likely be blind to his own derelictions at trial." Id. (citation omitted). In these types of cases, there is a natural conflict between an attorney's interest in protecting his or her professional reputation as a competent attorney and a client's interest in prevailing on an ineffective assistance of counsel claim for relief. Manning v. Foster, 224 F.3d 1129, 1134 (9th Cir. 2000). "That an attorney would have great incentives to prevent a client from prevailing in an ineffective assistance claim is both self-evident and well documented in the case law." Id.

The fact that Long's trial counsel represented him during

trial and through the 14-day window in which his motion for a new trial had to be filed supports Long's position that Colbath would be unlikely to recognize her own shortcomings at trial. In this case, the court [*11] finds that excusable neglect may exist because of trial counsel's alleged ineffective assistance, which would be a circumstance beyond Long's control. See *Kurka, 628 F.3d at 959* (stating that excusable neglect is an equitable consideration that takes into account all relevant circumstances as well as "circumstances beyond the party's control"). Because the court ordered further briefing on this issue and Long's *Fifth Amendment* claim, the court finds that this is not the type of case that is "usually best litigated" pursuant to *§ 2255* because the record has been developed. See *United States v. Miell, 711 F. Supp. 2d 967, 986 (N.D. Iowa 2010)* (concluding that unlike other cases that "the pertinent record is fully developed" so the ineffective assistance of counsel claim was "ripe" for consideration on direct review) (citations omitted). This factor weighs in favor of the court considering Long's motion on the underlying merits.

### D. Good Faith

There has been no evidence that Long acted in bad faith when he filed his untimely motion for a new trial. Because there is no evidence that any of Long's actions were done in bad faith, this factor supports a finding of excusable neglect.

The court [*12] presided over Long's trial and had the full transcript available for review. The court also ordered further briefing on the issue of excusable neglect, ineffective assistance of counsel, and whether or not Long's *Fifth Amendment* rights were violated at trial. For these reasons, the court deems there to be sufficient evidence in the record to proceed directly. After balancing the *Pioneer* factors and assuming without deciding that Long has satisfied the excusable neglect standard, the court will analyze his underlying ineffective assistance of counsel claim. The court will, therefore, reach and analyze whether attorney Colbath's assistance was defective and whether the government improperly used Long's *Fifth Amendment* rights against him.

### II. Ineffective Assistance of Counsel

The *Sixth Amendment to the United States Constitution* provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." *U.S. Const. amend. VI*. That right to effective assistance of counsel applies both at trial and on direct appeal. *Bear Stops v. United States, 339 F.3d 777, 780 (8th Cir. 2003)* (citation omitted). To successfully make an ineffective [*13] assistance of counsel claim, Long must show that "'(1) trial counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney, and (2) trial counsel's deficient performance prejudiced the defense.'" *Becker v. Luebbers, 578 F.3d 907, 915 (8th Cir. 2009)* (quoting *Armstrong v. Kemna, 534 F.3d 857, 863 (8th Cir. 2008))*.

The court's scrutiny of the attorney's performance is extremely deferential, with a strong presumption that counsel's performance was within a wide range of professional and reasonable judgment. *Armstrong, 534 F.3d at 863* (citing *Middleton v. Roper, 455 F.3d 838, 846 (8th Cir. 2006))*. To show prejudice, Long must establish that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id. at 866* (quoting *Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984))*. "Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim." *Worthington v. Roper, 631 F.3d 487, 498 (8th Cir. 2011)* (citing *Strickland, 466 U.S. at 697*).

### A. Deficient Performance

Long argues that his *Fifth Amendment* [*14] right to remain silent was unlawfully used against him by the government. He claims that his trial counsel was ineffective for failing to object to the admission of his statement asserting his right to remain silent, for opening the door to further use of the unlawful evidence, and for neglecting to file a motion for a new trial. The government asserts that Long's trial counsel was not ineffective because the allegedly unlawful admission by Long is admissible under Eighth Circuit precedent and because trial counsel's decisions were permissible trial strategy. Before the court can decide if counsel's failure to object to the use of Long's statement was deficient, there must be a determination of whether the use of the statement was constitutionally defective such that no reasonable attorney would have failed to object to its use.

The *Fifth Amendment to the United States Constitution*

offers protection that "[n]o person shall be . . . compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. The main protection afforded by the Fifth Amendment is to prevent a criminal defendant from being compelled to testify against himself in trial. United States v. Frazier, 408 F.3d 1102, 1109 (8th Cir. 2005) [*15] (citing Chavez v. Martinez, 538 U.S. 760, 767, 123 S. Ct. 1994, 155 L. Ed. 2d 984 (2003)). The Fifth Amendment also prohibits "comment by the prosecution on the accused's silence[.]" Griffin v. California, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). The Supreme Court has also made clear that "the prosecution may not . . . use at trial the fact that [the defendant] stood mute or claimed his privilege in the face of accusation" when faced with "police custodial interrogation." Miranda v. Arizona, 384 U.S. 436, 468 n.37, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The Supreme Court determined in Doyle v. Ohio, 426 U.S. 610, 619, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976) that the use of a defendant's postarrest, *post-Miranda* silence for impeachment purposes violated the defendant's rights under the Due Process Clause of the Fourteenth Amendment. *Miranda* warnings have an implicit assurance that the defendant's silence will not be used against him. Id. at 617-18. The court found, therefore, that this use of defendant's silence was improper because *post-Miranda* silence is ambiguous and could be an arrestee's exercise of his *Miranda* rights, so the use of that silence against him would penalize the arrestee for relying on the *Miranda* assurances made by the government. Id. at 618-19.

The Supreme Court has also concluded [*16] that the government's use of an arrestee's *post-Miranda* silence in its case-in-chief is improper when the defendant invokes his right to counsel in the face of questioning. Wainwright v. Greenfield, 474 U.S. 284, 292, 106 S. Ct. 634, 88 L. Ed. 2d 623 (1986). The Supreme Court found, however, that the use of postarrest but *pre-Miranda* silence to impeach a testifying defendant did not violate due process. Fletcher v. Weir, 455 U.S. 603, 607, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982). The court found that "[i]n the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand." Id.

The Supreme Court has not determined whether it is proper for the government to introduce evidence of a defendant's prearrest, *pre-Miranda* silence during its case-in-chief. There is a body of case law on the government's use of a defendant's silence, but not necessarily the government's use of the words used to invoke the right to remain silent. Long relies directly on a First Circuit case where the court found that the government's use of the defendant's statement that he was not going to confess to [*17] the police was an improper comment on the defendant's constitutional right to silence and could not be used against him. Coppola v. Powell, 878 F.2d 1562 (1st Cir. 1989). While there is a circuit split [1] in the courts of appeal as to whether the government may use the defendant's postarrest, *pre-Miranda* silence in its case-in-chief, the Eighth Circuit Court of Appeals has found that such evidence is admissible. [2] These cases guide the court's analysis of the government's use of prearrest and *pre-Miranda* statements.

In *Frazier*, the Eighth Circuit held that using "postarrest, *pre-Miranda* silence in a prosecution's case-in-chief was not unconstitutional." United States v. Osuna-Zepeda, 416 F.3d 838, 844 (8th Cir. 2005) (citing United States v. Frazier, 408 F.3d 1102, 1109-11 (8th Cir. 2005)). The court stated that when the defendant was [*19] arrested "there was no governmental action at that point inducing

---

[1] Compare United States v. Oplinger, 150 F.3d 1061, 1066-67 (9th Cir. 1998) (holding the privilege against self-incrimination does not apply when the defendant is under no official compulsion to speak); United States v. Zanabria, 74 F.3d 590, 593 (5th Cir. 1996) (concluding that when the silence is not induced by government action, the Fifth Amendment does not protect the use of defendant's prearrest silence); United States v. Rivera, 944 F.2d 1563, 1568 (11th Cir. 1991) (stating that the government can comment on defendant's silence when it occurs prior to arrest and prior to *Miranda*); United States v. Moore, 104 F.3d 377, 385, 322 U.S. App. D.C. 334 (D.C. Cir. 1997) (stating that the critical inquiry [*18] is not the giving of *Miranda* rights, but whether the defendant is in custody) with Combs v. Coyle, 205 F.3d 269 (6th Cir. 2000) (determining that defendant's counsel was ineffective for failing to object to the government's use of defendant's postarrest and *pre-Miranda* statement that he wanted to talk to his lawyer because it violated his Fifth Amendment right against self-incrimination); Coppola v. Powell, 878 F.2d 1562 (1st Cir. 1989) (determining that when defendant does not testify at trial it is impermissible to comment on any Fifth Amendment rights that were exercised); United States ex rel. Savory v. Lane, 832 F.2d 1011, 1017 (7th Cir. 1987) (determining that the right to remain silent attaches before formal adversarial proceedings commence).

[2] United States v. Osuna-Zepeda, 416 F.3d 838 (8th Cir. 2005); United States v. Frazier, 408 F.3d 1102 (8th Cir. 2005).

his silence," and the defendant "was under no government-imposed compulsion to speak." *Frazier, 408 F.3d at 1111*. Similarly, in *Osuna-Zepeda*, the Eighth Circuit determined that the case only concerned the defendant's "silence during and just after his arrest." *Osuna-Zepeda, 416 F.3d at 844*. Although Osuna-Zepeda had been arrested and taken into custody, he was not read his *Miranda* rights. *Id.* The government then tried to use Osuna-Zepeda's postarrest and *pre-Miranda* silence during the government's case-in-chief. *Id.* The Eighth Circuit concluded in both *Frazier* and *Osuna-Zepeda* that the introduction of defendants' silence did not violate their constitutional rights.

The Eighth Circuit also has said that whether the defendant has received his *Miranda* rights is what is determinative of the right to remain silent, but in this type of case there is more to the inquiry. *Vick v. Lockhart, 952 F.2d 999, 1003 (8th Cir. 1991)* (citation omitted). The precise inquiry is if the defendant is under a compulsion to speak. *Frazier, 408 F.3d at 1111*. The Eighth Circuit also noted that an arrest in and of itself is not sufficient government **[*20]** action that compels a defendant to speak. *Weir, 455 U.S. at 606*.

Here there was no arrest, no *Miranda* warnings, and no governmental action mandating speech. *See United States v. Rivera, 944 F.2d 1563, 1568 (11th Cir. 1991)* (concluding that "the government may comment on a defendant's silence if it occurred prior to the time he is arrested and given his *Miranda* warnings."). Long was under no compulsion to speak when he made the statement that he wanted to stop talking so he did not incriminate himself. He was told that he was free to leave or could stop talking at any time and was not under arrest or in custody. *United States v. Moore, 104 F.3d 377, 386, 322 U.S. App. D.C. 334 (D.C. Cir. 1997)* ("We therefore think it evident that custody and not interrogation is the triggering mechanism for the right of pretrial silence under *Miranda*."). Long's situation was less hostile than what occurred in either *Frazier* or *Osuna-Zepeda* because Long was not under arrest and was not given his *Miranda* warnings.

There is a distinction between *Frazier* and *Osuna-Zepeda* and Long's case because here the government used a substantive statement invoking silence rather than silence in the face of questioning. Many courts, however, **[*21]** have found that the use of words to claim a right to remain silent is the same as silence itself. *See Wainwright, 474 U.S. at 295 n.3* (stating "silence does not mean only muteness; it includes the statement of a desire to remain silent"). For these reasons, the court finds *Frazier* and *Osuna-Zepeda* persuasive as to the rationale and conclusion that the appropriate inquiry is whether Long was under a compulsion to speak when he made his statement. There was substantial evidence that Long was free to leave at any time and his presence at the interview with Agent Rice was voluntary. Moreover, there is no indication that when Long made his statement he was relying on the government's assurance that his silence would not be used against him because it was a *pre-Miranda* interview. *See Weir, 455 U.S. at 606* ("[W]e have consistently explained *Doyle* as a case where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him.").

Because Long was under no compulsion to speak it was not unconstitutional for the government to use Long's statements in its case-in-chief. For these reasons, Long cannot establish that his trial counsel's performance **[*22]** was deficient when she did not object at trial or did not file a motion for a new trial based on the use of Long's statement invoking his right to silence. *See Armstrong, 534 F.3d at 863* (noting the strong deference to finding counsel's performance was reasonable).

### B. Weight of the Evidence and Prejudice

Additionally, Long has not met his burden of establishing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, 466 U.S. at 694*. Long cannot show that there is a substantial likelihood that there would have been a different result but for the admission of Long's statements. *See Hanegan v. Miller, 663 F.3d 349, 355 (8th Cir. 2011)* ("The likelihood of a different result must be substantial, not just conceivable.").

Without the references to Long's statement of not wanting to incriminate himself, there was still strong evidence by two complaining witnesses that they had been victims of forcible sexual abuse by Long. AP testified extensively about the abuse that occurred in her home approximately 40 to 45 times. She testified that she told Brenda Brewer, Oma Perez, Suzie Red Cloud, Harriet Broken Nose, **[*23]** Mona Waters, Kristin Waters, Jacey Twiss, D.J. Clifford, Juan Ramos, and Brad Conroy about Long's abuse. Docket 269 at 3-4. Multiple witnesses testified at trial that AP told them that Long had been abusing her before she reported it to law enforcement. The 413 witness, TE, also testified about

Long's systematic abuse that occurred when she was young and Long was living with her. The jury saw all the witnesses testify at trial, and the jury made the determination of these witnesses' credibility. The jury only had to believe AP's testimony to find Long guilty of the charges.

Long cannot show that he was prejudiced by his trial counsel's performance because the overwhelming weight of the government's evidence showed Long's guilt. *See Simmons v. Taylor, 195 F.3d 346, 349 (8th Cir. 1999)* (stating that even if the court remanded the case back to the trial court for an evidentiary hearing "the overwhelming weight of the state's evidence of [defendant]'s guilt would make it impossible for him to demonstrate prejudice under *Strickland*[.]"). Because Long cannot satisfy either the deficiency prong or the prejudice prong of the *Strickland* test, he cannot get relief from his convictions based on **[*24]** ineffective assistance of counsel.

Long relies on *Coppola* to assert that the erroneous admission of his statement asserting his right to remain silent was not harmless error. That case is considerably different than Long's case when discussing the sufficiency of the evidence. In *Coppola*, the victim could not make a courtroom identification because it was too dark when the crime occurred. *878 F.2d at 1569*. The only substantial evidence was that the defendant fit the description of the suspect. *Id.* The majority of the other evidence was circumstantial. Three jail inmates testified against Coppola, but their testimony was not conclusive and raised "serious questions of credibility." *Id. at 1571*. The *Coppola* court concluded that "the harmless error question is close, we cannot conclude that the admission of petitioner's statement was harmless beyond a reasonable doubt." *Id. at 1571* (citation omitted). There was not "overwhelming evidence of guilt." *Id.* As previously stated, the government presented overwhelming evidence of Long's guilt, so *Coppola*'s reasoning is inapplicable.

### C. Trial Strategy

The government argues that Long's trial counsel was not ineffective because any choice not to object **[*25]** to references to Long's statement invoking silence amounted to acceptable trial strategy. Long asserts that no reasonable attorney would make a strategic decision to allow evidence into trial that would violate the defendant's constitutionally protected rights.

To be successful on an ineffective assistance claim, the defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland, 466 U.S. at 689* (quoting *Michel v. Louisiana, 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955))*. "Reasonable trial strategy does not constitute ineffective assistance of counsel simply because it is not successful." *James v. Iowa, 100 F.3d 586, 590 (8th Cir. 1996)* (citing *Stacey v. Solem, 801 F.2d 1048, 1051 (8th Cir. 1986))*. Counsel's strategic choices "made after thorough investigation are virtually unchallengeable" in later review. *Moeller v. Weber, 649 F.3d 839, 846 (8th Cir. 2011)* (citing *Strickland, 466 U.S. at 689*).

As was previously demonstrated, there is a circuit split as to whether statements like Long's are admissible in the prosecution's case-in-chief. Eighth Circuit case law suggests that this type of statement is admissible in the government's **[*26]** case-in-chief when the defendant was not under arrest or given his *Miranda* warnings. Moreover, there is sufficient evidence in the trial record to show that Long's trial counsel had a strategic reason for not objecting to the government's use of Long's statement. At trial the main incident of sexual abuse in dispute by Long against AP was centered around the use of Brenda Brewer's computer in her house. AP claimed she was abused after Long asked her to help him on the computer. Docket 268 at 85-86. Long claimed that AP came up behind him and rubbed herself on him. Long told Agent Rice about that story immediately before he stated that he wanted to stop talking and did not want to incriminate himself. Long told his version of the computer story to both Agent Rice and to AP's aunt, Brenda Brewer.[3] Docket 269 at 160 & Docket 269 at 78.

One of the main points that Long's trial counsel tried to bring out with each witness was whether that witness had heard about the computer incident to show that there **[*27]** were conflicting stories. Colbath cross-examined Agent Rice about Long's statement that AP came up behind him while he was on the computer and rubbed up against him. Colbath also intended to introduce testimony from Mona Waters that she saw a similar incident between Long and AP involving the computer, but that testimony was excluded by the court because it did not fulfill any of the exceptions to *Federal*

---

[3] Brewer stated that after she confronted Long about the abuse allegations Long told Brewer that he asked AP "for assistance at the computer and she put her arms around him." Docket 269 at 78.

*Rule of Evidence 412*. Docket 268 at 16-21. Colbath specifically asked Brewer if she knew about the computer incident. Colbath then had Brewer testify that when Long was confronted with the abuse allegation he told Brewer the story about AP rubbing up against him near the computer. Docket 269 at 85. Colbath stated that this evidence would give credibility to Long's statement to Agent Rice and would further corroborate his version of events. This story was directly tied in time to the "I do not want to incriminate myself" statement and was linked to Colbath's theory of the case.

When Colbath cross-examined Agent Rice on Long's statement, she asked Agent Rice questions about whether Agent Rice knew what Long meant when he said he did not want to incriminate himself. Colbath asked, "You [*28] don't know if he maybe thought that just saying he lived [in AP's house] during a time frame was going to get him into trouble, correct?" Docket 269 at 168-69. Colbath also got Agent Rice to admit that she did not know for sure what Long meant by his statement saying he did not want to incriminate himself. Colbath objected when the government asked Agent Rice whether Long ever said that "He didn't do anything" to AP. Docket 269 at 174. And immediately after that question on recross-examination, Colbath asked Agent Rice if Long ever told Agent Rice that "[AP] came up behind him when he was at the computer?" Agent Rice said, "He did say that, yes." Docket 269 at 175. In a later hearing outside the presence of the jury, Colbath stated that Long told Brewer the story about the computer, and "he explained the same story that was basically explained to Agent Rice that Agent Rice testified about." Docket 270 at 34. This information is indicative of Colbath's trial strategy of intentionally showing that there were conflicting stories and that Long's version of events were corroborated.

There is also support in the posttrial conference that Colbath acknowledged Long's right to remain silent [*29] and not to have that right used against him. [4] Additionally, at least once during the government's closing statement Colbath did object. Colbath objected when the government made the statement that Long "certainly didn't say that he didn't do it," to Agent Rice. Colbath objected and said, "He did say that he didn't do it." Docket 270 at 115. The court then instructed the jury, "Ladies and gentlemen, you need to rely on what you believe the evidence is and what you find the evidence is." Docket 270 at 115-16. That information leads to the conclusion that Colbath was aware of Long's rights and determined that it was important to highlight the conflicting stories about the computer incident.

After a thorough review of this record, the court finds [*30] that Long has not met his burden to show that his trial counsel's performance was ineffective. Colbath called numerous witnesses on Long's behalf, cross-examined the government's witnesses, frequently objected to evidence, questions, or argument by the government, argued against the use of a jury instruction on silence in the face of accusation, and appeared to zealously represent her client. Without more proof, Long has failed to overcome the presumption that his trial counsel's performance is presumed to be reasonable or that her actions may have been sound trial strategy.

## CONCLUSION

Although Long's motion for a new trial was untimely, the court could consider the underlying claim because ineffective assistance of trial counsel may amount to excusable neglect. Counsel's performance was not deficient in this case because Long's constitutional rights were not violated through the government's use of his statement invoking his right to silence. Long could not carry his burden of showing that his counsel's performance was deficient or that he was prejudiced because there was overwhelming evidence supporting his guilt. Additionally, Long could not prove that counsel's actions were not sound [*31] trial strategy. For all these reasons, Long's motion for a new trial is denied. Therefore, it is

ORDERED that Long's motion to vacate his judgment and grant a new trial (Docket 273) is denied.

IT IS FURTHER ORDERED that Long's sentencing hearing will take place on Friday, April 20, 2012, at 1:30 p.m. in Courtroom 2 in Rapid City, South Dakota.

Dated April 9, 2012.

BY THE COURT:

/s/ *Karen E. Schreier*

---

[4] The government requested that the court include a jury instruction discussing silence in the face of a statement of accusation. Colbath objected because Long "asserted a privilege with regard to Ms. Rice and remained silent, and this would be — addressing it in this way is a violation of his rights. You can't address — you can't bring up when someone asserts a privilege; you can't use that against them; you have that right." Docket 270 at 34.

KAREN E. SCHREIER

CHIEF JUDGE

---

**End of Document**