UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | CASE NO. <u>4:19-CR-40018 SOH</u> |
| ) | |
| LONNIE JOSEPH PARKER ) | |

**THE UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO DEFENDANT'S SECOND MOTION FOR NEW TRIAL PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 33**

The United States of America, by David Clay Fowlkes, United States Attorney for the Western District of Arkansas, and Special Assistant United States Attorney Anne E. Gardner, submits the following Response in opposition to LONNIE PARKER's second motion for new trial. *(Doc. 206)*.

**I.   BACKGROUND**

On June 15, 2022, the Grand Jury for the Western District returned a Second Superseding Indictment charging PARKER with five counts of violating 21 U.S.C. § 841. Following a trial, PARKER was found guilty on four of the five counts. *(Doc. 169)*. On March 3, 2023, PARKER's former counsel filed a motion for new trial, alleging that new evidence, in the form of guidelines from the Centers for Disease Control and Prevention, released after the trial had concluded, warranted a new trial. *(Doc. 196)*. This Court denied the motion on the basis that the guidelines did not constitute new evidence. *(Doc. 203)*.

PARKER has since retained new counsel. He has now filed a second motion for new trial, contending that a new trial is warranted because an instruction given by this Court to the jury at trial was in error and his former counsel was ineffective for failing to object to the instruction and failing to file a timely motion under Rule 33 regarding the instruction. *(Doc. 206)*. PARKER

1

concedes that the motion was filed after the time period allowed in Federal Rule of Criminal Procedure 33. He contends that the untimely filing was due to excusable neglect, specifically the ineffective assistance he claims was provided by his former counsel. For the following reasons, the United States respectfully requests that PARKER's motion be dismissed or, alternatively, denied.

## II.   THE LATE FILING OF THE MOTION WAS NOT DUE TO EXCUSABLE NEGLECT.

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. Rule Crim. P. 33(b)(2). As noted above, PARKER concedes that his motion was filed well after the 14-day period specified in Rule 33(b)(2). "When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made after the time expires if the party failed to act because of excusable neglect." Fed. R. Crim. P. 45(b)(1)(B). PARKER contends that his late filing should be excused under Rule 45(b)(1)(B) because the failure of his prior counsel to timely file a motion for new trial constitutes ineffective assistance of counsel.

"In *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) the Supreme Court set out the four factors to be considered when determining whether a late filing is due to excusable neglect: '[(1)] the danger of prejudice to the [opposing party], [(2)]the length of the delay and its potential impact on judicial proceedings, [(3)] the reason for the delay, including whether it was within the reasonable control of the movant, and [(4)] whether the movant acted in good faith.'" *United States v. Boesen*, 599 F.3d 874, 879 (8th Cir. 2010). "'The four *Pioneer* factors do not carry equal weight; the excuse

given for the late filing must have the greatest import.'" *Gibbons v. United States*, 317 F.3d 852, 854 (8th Cir. 2003) (quoting *Lowry v. McDonnell Douglas Corp.,* 211 F.3d 457, 463 (8th Cir.2000)). "'While prejudice, length of delay, and good faith might have more relevance in a closer case, the reason-for-delay factor will always be critical to the inquiry.'" *Id.* The Supreme Court of the United States has held that *Pioneer* applies in criminal cases. *See Stutson v. United States,* 516 U.S. 193, 196-98 (1996).

      The *Pioneer* factors weigh against a finding of excusable neglect. Regarding the first factor, there is real danger of prejudice to the United States, considering that there has already been a lengthy trial that encompassed vast amounts of evidence and a large number of witnesses. As for the second factor, the delay has the potential to impact judicial proceedings, in that possibly granting a new trial several months after the prior trial was completed would consume a large share of judicial resources, particularly considering the length and complexity of the first trial. The most important factor, the reason for delay, clearly weighs against PARKER. He attempts to explain the delay by blaming his former counsel for not filing a timely motion asserting the claims he raises in the motion. However, a review of the motion makes plain that it is not well-taken and that PARKER has cited no direct authority in support of his claims. As will be explained in more detail below, PARKER's counsel did not provide ineffective assistance by either failing to challenge the instruction at trial or failing to file a timely motion for new trial regarding the instruction. Prior counsel's failure to file the instant motion within the time period set forth in Rule 33 was not the product of neglect, but was most likely due to a recognition that the bases asserted in the motion lack credence. Regarding the fourth factor, the United States has no basis on which to believe that PARKER acted in bad faith.

**III.   THE INSTRUCTION GIVEN BY THIS COURT WAS AN ACCURATE STATEMENT OF THE LAW.**

PARKER seeks a new trial on the basis that Jury Instruction Number 6 was given in error because it states the wrong standard for convicting a physician of violating 21 U.S.C. § 841(a). In Jury Instruction Number 6, this Court instructed the jury as follows:

> Counts One through Five charge the defendant with the unauthorized distribution of a Schedule II controlled substance (oxycodone) and a Schedule V controlled substance (promethazine with codeine solution). These crimes have three essential elements, which are:
>
> *One*, the defendant knowingly or intentionally distributed the controlled substance on or about the date charged;
>
> *Two*, the defendant knew at the time of distribution that the oxycodone or the promethazine with codeine solution was a controlled substance; and
>
> *Three*, the defendant knowingly or intentionally distributed the substance without a legitimate medical purpose outside the usual course of professional practice.
>
> Now I will provide more detailed instructions on these terms. You are instructed that:
>
> (A) Oxycodone is a controlled substance within the meaning of the law. Promethazine with codeine solution is a Schedule V controlled substance within the meaning of the law.
>
> (B) The term "distribute" means the delivery or transfer of a controlled substance. This term includes the writing or issuing of a prescription.
>
> (C) The term "intentionally" means that the act was done deliberately.
>
> (D) The term "knowingly" means that the individual understands the nature of his conduct and has not acted through ignorance, mistake, or accident.
>
> (E) The terms "legitimate medical purpose" and "usual course of professional practice" mean acting in accordance with appropriate criteria for prescribing controlled substances in the State of Arkansas. You have heard testimony about what constitutes the usual course of professional practice and legitimate medical purpose for the prescription of controlled substances in the State of Arkansas, and you are to weigh that evidence in the same way you would weigh any other evidence in this case.

> In considering whether the defendant issued a prescription without a legitimate medical purpose and not in the usual course of professional practice, you may consider all the defendant's actions and the circumstances surrounding them.
>
> For you to find the defendant guilty, the government must prove beyond a reasonable doubt that, at the time he issued the controlled substance prescription, he knew that he was acting or he intended to act without a legitimate medical purpose and outside the usual course of professional practice.
>
> If you unanimously find that the government has proven each of these elements beyond a reasonable doubt as to each of the counts charged in Counts One through Five, then you must find the defendant guilty of the crime charged in that particular count. Record your determination on the Verdict Forms, which will be submitted to you with these instructions.

PARKER specifically takes issue with the definitions of "legitimate medical purpose" and "usual course of professional practice," claiming that it was error for the terms to be based on state standards, as opposed to a national standard. He is incorrect.

The United States would note that PARKER's argument appears, at least in part, to be based on a misunderstanding of the evidence presented at trial. The challenged instruction makes reference to "criteria," and PARKER's motion reads as though he believes those criteria were limited to state medical regulations. However, at trial, the jury was presented with applicable Arkansas statutes, a state medical regulation, and expert testimony. Therefore, to the extent PARKER's argument is premised on the idea that he was convicted solely based on alleged violations of state regulations, the argument is error. In addition, as will be demonstrated below, state regulations are relevant to the question of whether a physician-defendant was acting with a legitimate medical purpose in the usual course of professional practice.

PARKER's assertion that the Supreme Court has mandated the use of a national standard of medical practice in prosecutions under § 841 is not supported by the case law. In *United States v. Moore*, 423 U.S. 122 (1975), which is cited by PARKER in his motion, the Supreme Court of the United States held that "registered physicians can be prosecuted under [§] 841 when their

activities fall outside the usual course of professional practice." In *Moore*, the Supreme Court approved of a jury instruction which instructed the jury that it was required to find "beyond a reasonable doubt that a physician, who knowingly or intentionally did dispense or distribute [a controlled substance] by prescription, did so other than in good faith for detoxification, in the usual course of professional practice and in accordance with a standard of medical practice generally recognized and accepted in the United States." 423 U.S. at 138–39.

PARKER contends that this language indicates the election of a national standard. However, In *United States v. Joseph*, 709 F.3d 1082, 1095 (11th Cir. 2013) (abrogated on other grounds), the court held that instructing the jury "to consider whether the defendants acted 'in accordance with a standard of medical practice generally recognized and accepted in the United States'" was not error because the instruction "did not suggest that the jury must evaluate the conduct of the defendants against a single national standard of practice." Instead, the instruction "required the prosecution to prove that the actions of the defendants were inconsistent with *any* accepted standard of professional practice." *Id.* (emphasis original). As the Eleventh Circuit correctly stated, a physician-defendant's conduct is not required to be compared against a national standard of medical practice. In prosecutions of physician-defendants under § 841, the United States is instead only required to prove that the defendant's actions were outside the scope of *a* standard of medical practice generally accepted in the United States. The instruction given by this Court told the jury to determine PARKER's guilt based on the standard of professional practice in Arkansas. That standard is clearly "a standard of practice generally recognized and accepted in the United States."

In *Gonzales v. Oregon*, 546 U.S. 243, 270 (2006), the Supreme Court of the United States expressly stated that "[t]he structure and operation of the [Controlled Substances Act (CSA)]

presume and rely upon a functioning medical profession regulated under the States' police powers." The Court also noted that the CSA's preemption provision, "which indicates that, absent a positive conflict, none of the Act's provisions should be "construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates ... to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State" cautions "against the conclusion that the CSA effectively displaces the States' general regulation of medical practice." *Id.* at 270–71 (citing 21 U.S.C. § 903).

The Court also recognized that "the Federal Government can set uniform national standards regarding medical practices," but stated that in the CSA, there is "only one area in which Congress set general, uniform standards of medical practice[,]" and that area is the medical treatment of narcotic addiction. *Id.* at 271. The Court noted that the CSA is silent "on the practice of medicine generally" and that it recognizes "state regulation of the medical profession." *Id.* In short, the Court held in *Gonzales* "that the CSA did not grant expansive federal authority to regulate medicine by defining the scope of legitimate medical practice, *which was left up to the states*." *United States v. Bereznak*, No. 3:18-CR-39, 2018 WL 1783171, at *2 (M.D. Pa. Apr. 13, 2018) (citing *Gonzales*, 546 U.S. at 270-71) (emphasis added).[1]

It is clear that, after *Gonzales,* reference to state medical regulations is permitted in determining whether a physician-defendant has violated § 841. As one district court noted, "[o]ver the years, the lower courts held that violations of generally accepted practices*, often in the form of state medical regulations*, were relevant as proof of criminal liability under 21 U.S.C. § 841."

---

[1] In *Bereznak*, the court held that the fact that a substance was not a controlled substance under state law did not "foreclose prosecution of a state-licensed physician for prescribing a federally controlled substance outside the scope of legitimate medical practice, *as defined by the state where he practices*." 2018 WL 1783171, at 2 (emphasis added).

7

*United States v. Prejean*, 429 F.Supp.2d 782, 800 (E.D. La. 2006) (emphasis added). The Court also stated that the discussion in *Gonzales* regarding Congress's authority to set national standards and the fact that it did not do so in the CSA is an indication that "the majority opinion in *Gonzales* strongly supports the proposition that states primarily are responsible for defining what 'legitimate medical practice' is." *Id.* at 801. The district court concluded that *Gonzales* did not "disturb the prior body of case law that allows violations of state regulations of medical practice as relevant evidence of guilt under 21 U.S.C. § 841." *Id.*

The decision in *Ruan v. United States*, 142 S. Ct. 2370 (2022), did not alter the law with regard to this issue. In *Ruan*, the Court held that "once a defendant meets the burden of producing evidence that his or her conduct was 'authorized' " under § 841(a), "the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner." 142 S.Ct. at 2376. The holding in *Ruan* speaks to the mens rea required for a physician-defendant to be found guilty of violating § 841(a). The decision has no bearing on how the terms "legitimate medical purpose" and "usual course of professional practice" are to be defined. That issue was not before the Court, and the excerpt from the oral argument in that case that PARKER cites in his brief, when placed in its proper context, demonstrates that Justice Gorsuch was expressing concern that § 841(a) was essentially a strict-liability offense for physician-defendants in the absence of the mens rea requirement the Court subsequently added in its decision. The discussion in *Ruan* of the necessity for a scienter requirement in § 841(a) in prosecutions of physician-defendants has nothing whatsoever to do with the standard of be applied for establishing what is a legitimate medical purpose of what constitutes the usual course of professional practice.

Moreover, practical application of the holding in *Ruan* points toward the advisability of relying on state standards in determining legitimate medical practice and the usual course of

professional practice. Following *Ruan* the government is required to prove that a physician-defendant knowingly or intentionally acted in an unauthorized manner. Physicians are required, by virtue of being licensed in a particular state, to be aware of the requirements of medical practice in that jurisdiction. Requiring juries to apply an undefined national standard opens up the possibility that physician-defendants would claim ignorance of the national standards. The same cannot be said of state standards. Thus, *Ruan*, at a minimum, does nothing to indicate that reference to national standards of medical practice is required in proving that a prescription is unauthorized.

It is clear that, as the law currently stands, it is perfectly acceptable for the terms "legitimate medical purpose" and "usual course of professional practice" to be defined by reference to state standards. PARKER has failed to demonstrate that Jury Instruction 6 is an incorrect statement of the law.

### III. PARKER HAS NOT DEMONSTRATED INEFFECTIVE ASSISTANCE OF COUNSEL BY HIS FORMER COUNSEL.

"Generally, to be successful on a claim of ineffective assistance of counsel, a defendant must 'show both deficient performance by counsel and prejudice to the defense caused by that performance.'" *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013) (quoting *Barger v. United States,* 204 F.3d 1180, 1181 (8th Cir. 2000)). "'Deficiency means that counsel's performance fell below an objective standard of reasonableness, and prejudice means that, but for counsel's errors, a reasonable probability exists that the result ... would have been different.'" *Id.* (quoting *Deltoro–Aguilera v. United States,* 625 F.3d 434, 437 (8th Cir. 2010)). PARKER has not satisfied either prong with regarding to his claim that his counsel was ineffective for failing to object to Jury Instruction Number 6.

As demonstrated above, PARKER's challenge to the jury instruction lacks merit. Therefore, his former counsel's failure to raise the objection was not ineffective assistance, as it is

not ineffective assistance for counsel to fail to raise an objection that is meritless. *See Thomas v. United States*, 951 F.2d 902, 905 (8th Cir. 1991) (per curiam). Moreover, PARKER has not demonstrated prejudice. Although he claims that reference to a state standard is impermissible and that reference to a national standard is required, he fails to give any indication whatsoever as to what that national standard would be. Further, his motion contains no indication at all that any such national standard would be materially different from the Arkansas standard utilized at trial. Having failed to do so, he cannot demonstrate the existence of a reasonable probability that the outcome of his trial would have been different, had his prior counsel raised the argument he raises in his motion. Accordingly, PARKER has failed to show that he received ineffective assistance of counsel.

WHEREFORE, the United States respectfully requests that PARKER's motion for new trial be dismissed or, alternatively, denied.

DAVID CLAY FOWLKES
UNITED STATES ATTORNEY

By: /s/ Anne E. Gardner

ANNE E. GARDNER
Special Assistant United States Attorney
P.O. Box 1229
Little Rock, Arkansas 72203
(501) 340-2600
Anne.Gardner2@usdoj.gov